IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JADE LANDERS, | CV 24-38-BLG-SPW-TJC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| CUSTER COUNTY, CUSTER COUNTY SHERIFF'S DEPARTMENT, SHERIFF BRANDON KELM in his official and individual capacity, | |
| Defendants. | |

Plaintiff Jade Landers ("Landers") brings this action against Defendants Custer County, Custer County Sheriff's Department and Sheriff Brandon Kelm ("Defendants") under 42 U.S.C. § 1983 and Montana law, following the termination of his employment as a Deputy Sheriff with Custer County.

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. 47), which has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B).  The motion is fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court **RECOMMENDS** Defendants' motion be **GRANTED in part** and **DENIED in part**.

1

## I.    BACKGROUND[1]

Landers began working as a Deputy Sheriff for the Custer County Sheriff's Office on October 11, 2016.

In June 2020, Landers applied for a search warrant in the course of a drug investigation involving an individual named Matthew Eads.  On January 5, 2021, during the pendency of Eads' criminal case, State District Court Judge Michael Hayworth issued an order denying a motion to suppress that had been filed by Eads.  In the order, however, Judge Hayworth noted the warrant application submitted by Landers "includes positive results from one NIK test, but omits the fact that other field tests were performed that yielded 'negative' results."  Judge Hayworth also stated that "[b]y including one test result, the Court was misled in terms of law enforcement's confidence in the illegal nature of the substance."[2]

The parties dispute when Custer County Attorney Wyatt Glade became aware of Judge Hayworth's statements about the court being misled in the Eads order.  Landers argues Glade was aware shortly after the order was issued, but took no action against Landers for two years.  Defendants assert Glade was not aware until early 2022, and was then reluctant to take any action because the election for

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

[2] Landers disputes that the district court was misled, but does not dispute the contents of Judge Hayworth's order.

Custer County Sheriff was underway, and he also wanted to get more training and education on the proper procedure for handling the order.

In 2022, Landers ran for Custer County Sheriff but lost in the primary. Brandon Kelm and then-Sheriff Pat Roos advanced to the general election. After his defeat in the Primary, Landers supported Roos in the general election, and made negative comments on social media about Kelm. Kelm won the election.

On December 28, 2022, three days before Sheriff Roos left office, Glade wrote Roos a letter, stating that Judge Hayworth "was misled by Landers' omission of negative test results on the drug evidence in question." Glade concluded that he must disclose the Eads order in every case that Landers investigated.[3]

Kelm took office on December 31, 2022. Two weeks later, on January 15, 2023, Kelm gave Landers written notice that he was being placed on administrative leave. Kelm stated he had investigated Landers' involvement in "State of Montana vs. Matthew Walter Eads, JR, and an official letter from Custer County Attorney Wyatt Glade dated December 28, 2022, stating that he must disclose an order by District Court Judge Hayworth stating the court was misled by your omission. It appears that your credibility is damaged to the extent that your investigations are compromised. Thus, your ability to function as a law enforcement officer is also

---

[3] Landers purports to dispute the contents of Glade's letter. In substance, however, he does not dispute what was stated in the letter, but rather disagrees with the conclusions expressed by Glade.

compromised and you are unable to perform all aspects of your duties as a deputy for Custer County.  Please see attached Custer County Sheriff's Office Policy 605, Brady Information."  Kelm further stated that it appeared disciplinary action up to and including termination may be warranted.  Kelm advised Landers that he had a right to respond in writing within three working days.

On January 18, 2023, Landers responded in writing, and requested additional time to respond to the allegations.  Landers also opined that the Eads matter was being used against him as political retaliation.  Landers submitted a supplementary response on January 20, 2023.

On January 30, 2023, Kelm issued a termination letter to Landers.  The letter stated that Kelm found "termination is appropriate because you are no longer able to perform all aspects of your duties as a deputy for Custer County."  Pursuant to the letter, Landers was terminated effective February 1, 2023 at 5:00 p.m.

Landers filed an administrative complaint with the Human Rights Bureau on February 3, 2023, alleging discrimination in employment based on political views and retaliation for protected activity under the Human Rights Act.

On February 3, 2023, Landers also grieved his termination to the Custer County Commissioners, which was denied on February 27, 2023.

Landers filed the instant action on March 26, 2024.  He asserts four claims: (1) violation of civil rights under 42 U.S.C. § 1983, (2) violations of the Montana

State Constitution, (3) negligent and intentional infliction of emotional distress, and (4) negligence.

In the Human Rights matter, a contested case hearing was held before Hearing Officer Jeffrey M. Doud on July 17, 2024 through July 19, 2024. At the hearing, Landers and the Custer County Sheriff's Office were represented by counsel. Landers and seventeen other witnesses provided sworn testimony. One video deposition was presented, and several exhibits were admitted. The parties were then permitted to submit post-hearing briefing.

On December 17, 2024, Hearing Officer Doud issued a written decision finding the Custer County Sheriff's Office did not discriminate or retaliate against Landers. Thereafter, Landers appealed to the Human Rights Commission. On March 20, 2025, the Human Rights Commission orally affirmed Hearing Officer Doud's decision. Landers indicates the Human Rights Commission issued its written decision on June 17, 2025, and he intended to file a Petition for Judicial Review of the Commission's decision by July 17, 2025. As of the time of this writing, it does not appear Landers' appeal through the state court system is complete.

Defendants now move for summary judgment on all claims Landers asserts in this action.

/ / /

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party.  *See Matsushita*, 475 U.S. at 587.

## III.    DISCUSSION

### A.    Res Judicata

Defendants argue Counts I-III are barred by the doctrine of res judicata. Defendants assert this case centers on the same parties, facts and subjects as the case before the Human Rights Bureau, and therefore Landers' claims are precluded by the prior administrative proceedings.  Landers counters that res judicata does not apply, in part, because no final judgment has been entered concerning the Human Rights matter.  Landers has the better argument.

6

Under 28 U.S.C. § 1738, federal courts are required give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered. *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985). Section 1738 applies, by its own terms, when administrative decisions have been reviewed by state courts of general jurisdiction. *Clements v. Airport Authority of Washoe Cty.*, 69 F.3d 321, 326-37 (9th Cir. 1995). But Section 1738 "does not govern cases involving unreviewed decisions of a state administrative hearing board or commission." *Miller v. Cty. Of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994) citing *University of Tenn. v. Elliott*, 478 U.S. 788, 794 (1986).

Nevertheless, the Supreme Court has created a federal common law rule of preclusion which applies to unreviewed state administrative adjudications. In *Elliot*, the Supreme Court held "that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, *U.S. v. Utah Construction & Mining Co.*, 384 U.S., at 422, 86 S.Ct., at 1560, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Elliot*, 478 U.S. at 799. Thus, when the administrative proceeding "meets the requirements set for in *Utah Construction*, it may rise to the level of a 'judicial proceeding' entitled to preclusive effect by section 1738." *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986).

7

Here, the Human Rights matter is apparently still under review by the State court.  Therefore, it remains an unreviewed administrative adjudication.  Accordingly, the "threshold" inquiry is whether the Human Rights proceeding "contained the characteristics of fairness to all parties which were described by *Utah Construction* as sufficient for *res judicata* to apply through the federal common law expansion of section 1738."  *Guild Wineries & Distilleries v. Whitehall Co., Ltd.*, 853 F.2d 755, 759 (9th Cir. 1988).  Under *Utah Construction*, res judicata may apply to administrative decisions when the administrative agency (1) acted in a judicial capacity; (2) resolved disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to litigate.  *Utah Construction*, 384 U.S. at 422.

This court has previously determined that the Montana Human Rights Bureau "is set up and acts in a judicial capacity."  *Slice v. Ferriter*, 2009 WL 2948582, *7 (D. Mont. May 27, 2009).  Hearing Officer Doud's written findings demonstrate that disputed issues of fact and law were resolved.  Further, the parties had an adequate opportunity to litigate Landers' claims in front of the agency.  The parties were represented by counsel, presented witnesses and evidence at the contested hearing, and had the opportunity to submit post-hearing written arguments.  Accordingly, the Human Rights matter meets the *Utah Construction* fairness requirements.

8

Having found the Human Rights matter satisfied the threshold inquiry under *Utah Construction*, the Court must "now turn to the traditional res judicata analysis to determine if, under the law of [Montana], the [administrative] decision would be given preclusive effect in [Montana]." *Guild Wineries*, 858 F.2d at 761. Under Montana law, res judicata bars a plaintiff from relitigating a matter if the following elements are met:

1. The parties or their privies are the same;
2. The subject matter of the action is the same;
3. The issues related to the subject matter are the same;
4. The capacities of the person are the same in reference to the subject matter and the issues between them; and
5. *A final judgment has been entered.*

*Clark v. McDermott*, 519 P.3d 76, 84 (Mont. 2022) (emphasis added).

A final judgment is a prerequisite for the application of res judicata in Montana. *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273 (Mont. 2006). *See also State Med. Oxygen & Supply, Inc. v. Am. Med. Oxygen Co.*, 844 P.2d 100, 103 (Mont. 1992) ("[I]n order for the operative criteria [for res judicata] to apply, there must be 'a final judgment on the merits by a court of competent jurisdiction."); *Parini v. Missoula Cty. High School, Dist. No. 1*, 944 P.2d 199, 204 (Mont. 1997) ("The doctrine of res judicata bars the relitigation of a claim once a final judgment has been entered.").

The Montana Supreme Court has applied res judicata to prior administrative decisions, but only where the administrative decision was upheld on judicial

review.  *See e.g. Rooney v. City of Cut Bank*, 286 P.3d 241, 244 (Mont. 2012)

("When the exhaustion of administrative remedies produces an administrative

decision *that is upheld on judicial review*, principles of issue and claim preclusion

properly may be applied to redundant claims made under other laws.") (emphasis

added); *Clark*, 518 P.3d at 83-85 (finding plaintiff's §1983 claim was precluded by

the Human Rights Commission's Final Agency Decision that had been affirmed by

state district court); *Nasi v. State Dep't of Highways*, 753 P.2d 327, 329 (Mont.

1988) (holding Board of Personnel Appeals decision had res judicata effect where

former employee was provided with "a full contested case hearing which was

subsequently judicially reviewed").  *See also Holcombe v. Hosmer*, 477 F.3d 1094,

1099-1100 (9th Cir. 2007) (holding §1983 claim was precluded by an

administrative decision that had been upheld on judicial review by the state court).

　　　Here, as noted, the State court's review of the Human Rights matter is not

complete.  Therefore, the prior administrative decision has not been "upheld on

judicial review," such that it would be given preclusive effect under Montana law.

*Rooney*, 286 P.3d at 244.  Defendants' motion for summary judgment as to Counts

I-III on grounds of res judicata should, therefore, be denied.[4]

---

[4] In Defendant's reply brief, it is suggested that this matter be stayed if it is
determined that re judicata does not apply prior to judicial review.  (Doc. 54 at 4.)
But as to the merit of Defendant's pending motion for summary judgment, the
motion should be denied.  Whether it is appropriate to stay the trial of this matter

**B.     Count III – Infliction of Emotional Distress**

Defendants argue, in the alternative, that even if res judicata does not apply to Landers' emotional distress claim, the claim fails because there is no evidence Landers experienced serious or severe emotional distress.

Montana law recognizes an independent cause of action for infliction of emotional distress "under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission." *Sacco v. High Country Ind. Press, Inc.*, 896 P.2d 411, 426 (Mont. 1995). "To constitute 'serious' or 'severe,' the emotional distress must be 'so severe no reasonable person could be expected to endure it.'" *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 344 (Mont. 2013). The question of whether the threshold level of emotional distress can be found is for the Court to determine. *Sacco*, 896 P.2d at 425 ("It is for the court to determine whether on the evidence severe [serious] emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.") (*quoting* Restatement (Second) of Torts, § 46, comment j at 78).

The Montana Supreme Court has pointed to several factors for determining whether there is sufficient evidence of severe emotional distress, including: (1)

---

until after completion of the state court's judicial review is for Judge Watters, as the trial judge, to determine.

whether the plaintiff had any physical manifestations of emotional distress; (2) whether counseling was sought or recommended; (3) whether the plaintiff took medication or the use of medication dramatically increased; (4) whether the plaintiff had continuous nights of sleeplessness or days without appetite; (5) whether the plaintiff maintained close relationships with family members and friends; (6) the duration of the emotional distress; and (7) the circumstances under which the infliction incurred, including whether the plaintiff witnessed a distressing event. *Feller*, 299 P.3d at 345.

Here, the Court finds Landers has not presented evidence of the type of emotional distress necessary to demonstrate serious or severe compensable emotional distress. Landers testified at the contested case hearing that after being terminated he started drinking heavily, encountered marital problems and separated from his wife for a time, and lost sleep. (Doc. 49 at 35-39.) He also stated that losing his job was emotionally difficult because it "ruined [his] life plan" of working at the sheriff's office until retirement. Landers stated he tried to get counseling, but was unsuccessful. (*Id.*) He explained he took it upon himself to quit drinking on his own. (*Id.*)

Landers further testified at his deposition in this action that his termination caused him emotional distress because he was making decent money as a deputy and had to start over with a new career at 40 years old. (Doc. 53-5 at 4.) He

acknowledged that he no longer drinks, and that he and his wife are back together. (*Id.* at 6.) But he stated that it still irritates him every day that he doesn't get to work in law enforcement, and that it also depresses him quite often. (*Id.* at 19.) Landers testified that he has never been diagnosed with depression, or prescribed any medications. (*Id.* at 25-26.)

The Court finds that consideration of the *Feller* factors does not lead to the conclusion that Lander's emotional distress rises to the level where severe emotional distress may be found. Landers has not been treated for alcoholism or mental health, stopped drinking upon his own volition, has not been prescribed medication, did not experience a lengthy period of emotional distress, and has reconciled with his wife and describes his family as being back together. As this district has noted, being "distraught and anxious" after losing a job, even when it causes a change in appetite and inability to sleep "is not the type of emotional distress that a reasonable person, ordinarily constituted . . . would be unable to cope with." *Newman v. Lambert School Dist. Nos. 4 & 86*, 2009 WL 10701662, *6 (D. Mont. July 9, 2009).

The Court recognizes that Landers understandably experienced stress, anxiety, and disappointment after losing his employment. Nevertheless, taken as a whole, his testimony does not show that his emotional distress was so serious or

severe that "no reasonable person could be expected to endure it." *Feller*, 299 P.3d at 344.

Accordingly, Defendants' Motion for Summary Judgment as to Count III should be granted.

### C.   Count IV – Negligence

Defendants move for summary judgment on Landers' negligence claim in Count IV on grounds that the claim fails as a matter of law under Montana law. Landers does not contest the dismissal of his negligence claim.  (Doc. 52 at 18.) Accordingly, Defendants' Motion for Summary Judgment should be granted as to Count IV.

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 47) be **DENIED as to Counts I and II, and GRANTED as to Counts III and IV**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 19th day of December, 2025.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

15